I'm happy to be here, Your Honor. May it please the Court, my name is Steve Richkind, and I represent... Have a happy customer, yeah. Well, I represent David Simmons, and I'm really honored to be before this Court today. I've never been to the Ninth Circuit. I actually, before this case, had never filed any federal case, but necessity is the mother of invention. And that's why I'm here. I am a stand for the Constitution, that double jeopardy and due process should mean something. And as applied to this case, Mr. Simmons has gotten a raw deal at every turn. So I'm here today to be a stand for all the people of the United States, that the Constitution is supposed to mean something. And what they did to David Simmons is unconscionable. It shocks the conscience, violates substantive due process. May I ask you what is the status of the second misdemeanor prosecution? Yeah, I'd be happy to address that. How it relates to the first. Because there were two cases going at the same time, and I'm the lawyer in both cases, it seems to me that my ethical duties, because ethics has been at the heart of this, that my ethical duties to my client was first to help him to avoid a second criminal conviction that could result in him being branded a sex offender for life. And so that was what the Attorney General's office was bringing after the original district attorney finally withdrew, saying, oh, we have a conflict of interest. It was great that they finally recognized. But then the Attorney General stepped in and they increased the number of charges against him and made a worse plea offer. And so this was the kind of thing that brought all sorts of evidence, redoubling the government's forces to get him again. And so to answer your question, we entered a conditional plea to harassment. He's in good shape now, isn't he? Yeah, there was a condition. Here's what happened here. Okay. The prosecution district attorney asked the jury to return an indictment against your client. Yes. Two counts of sexual relations with a minor, 14, he's 18, and two counts. I'm sorry, Your Honor, some of those facts are wrong. There are differences in ages, only three years. He was 17 when she was 14, and they were both in high school. Okay. And then he turned 18 in the course of a one-year relationship, and the district attorney offered a six-count indictment to the grand jury. They rejected all six. But the district attorney didn't know that. Well, you know, probably one matter out of a thousand presented to a grand jury will result in a no bill, if that many. Huh? If that many. And so this district attorney, I guess he assumed that a no bill, that the grand jury returned an indictment. Your Honor, yeah. That he proceeded on that. And then your client pled guilty to that indictment. And were you the lawyer then? No, I wasn't the lawyer. Well, whoever the guy's lawyer was, I don't know whether he got a copy. The first lawyer was Ms. Kimball. I don't know whether she got a copy of that indictment or not. Apparently, I couldn't find one in our file. And so they went along, and then a grand jury, grand juror read about it in the paper, called the DA and said, what's going on here? We didn't return an indictment. So the DA right away got in there and told the defense attorney, told the judge, admitted that he didn't check closely enough, I suppose, to see that a no bill had been returned. This is on October 31, 2006. And then that case was dismissed. No, Your Honor. That's not quite how it went. Well, anyway, that case went away. Went away. Went away.  What happened? Then they came back, and your client pled, I believe, to a misdemeanor counsel. But in the meantime, he'd served his 30 days. So he pled to his misdemeanor counsel. I don't think he got any additional time. They got an order of discharge. He was put on probation. He was put on probation. No, there was no probation. He got an order of discharge in the harassment plea that was entered like three years after the second case was filed. I know. Anyway, there were certain conditions imposed that if he behaved himself for a certain period of time, then he could come back in and ask that the matter be dismissed. And there was no requirement that he register as a sex offender. Yeah, the outcome of the second case. He came up with all this work to his eventual benefit. Yeah. I kind of pat myself on the back for that. But, Your Honor, I just, before my time runs out, I want to make a point about why. First of all, I cited Rankin v. Johnson in my reply brief, and that had been overruled by this court in Ashelman. But what's consistent about Rankin v. Johnson and Ashelman is that when a court acts in the clear and knowing absence of jurisdiction, there's no immunity. On October 31, 2006, they realized that they had acted in the absence of jurisdiction. That was because the operation of the statute 132.360, whatever it is, the statute that says when the not true bill is filed, the effect thereof is to dismiss the case. The case was dismissed on the filing of the not true bill. And the fact that they don't read it means that they're taking the risk. There's a substantial risk. They're disregarding a substantial risk that they could be operating without subject matter jurisdiction. And that's what they did. You're not saying that the prosecutor acted in bad faith. No, bad faith is irrelevant. Under Ashelman, we get that it doesn't matter if it's negligence. It doesn't matter if it's intentional. It doesn't matter if it's malicious. What matters is did they operate it in the absence of subject matter jurisdiction, and then did they operate after they know they're in the absence of subject matter jurisdiction, did they continue to operate? And they did. The absence, after they discover and know that they lack subject matter jurisdiction, that they punished him. Without subject matter jurisdiction, they label him a sex offender, they put him in jail. Now, when they realize that they have no jurisdiction and no case is pending before the court. He did some bad things when he became 18 years old. You know, I don't think you can presume that he did some bad things. You can presume that this young man who's 18 years old, uneducated and poor, is simply like every man, like you and me, who's protected by the Constitution. Yeah. He assumed that when he was carrying on with his 14-year-old. When he was in high school, he had a high school girlfriend who was three years younger than him. That was, and the grand jury said no crime. He did a lot of bad things.     He did a lot of bad things. Now, things are different now than when I went to high school. Okay? Okay. I appreciate that, Your Honor. Things are. It's sad. But what do you do with the absolute immunity doctrine for the prosecutors? Well, there's no immunity in the clear and knowing absence of jurisdiction. Ashelman and Rankin v. Johnson agree on that subject. And what we have under these facts and what distinguishes these facts from Rankin v. Johnson and Ashelman, these two cases are distinguishable because, in this case, they knew that they had no jurisdiction, no subject matter jurisdiction. And for the first prosecution, they did not know. The first prosecution, they did not know. Right. But when the absolute immunity, it doesn't matter whether you know it. That's right. And here's what happened. On Halloween 2006, he gets out of jail, having fully served his jail sentence. And coincidentally, on that same day, Halloween, they discover that they had acted and sent him to jail without subject matter jurisdiction. This is explicit. Well, you say subject matter jurisdiction. Yes. Now, what case says that a court lacks subject matter jurisdiction if a no true bill is returned? The statute is 132 ORS, 132 point, I think it's 360. And it's fully briefed. But the statute says the effect of the filing of the no true bill is a dismissal of the case. That's different than saying lack of jurisdiction. Well, the statute digested the court of the ability to do anything to Mr. Simmons because the statute directed that he be released and that the case be dismissed. But the case was not dismissed. Different than a lack of jurisdiction. If you have the ability to dismiss the case, implicit in that is you have the jurisdiction to do it, subject matter jurisdiction to do it. I'd like to reserve the balance of my time so that you can read. Well, to finish the answer then regarding jurisdiction, if the statute says the case is automatically dismissed, then I ask the court what authority the government has to continue prosecuting him after the case is dismissed. Where is the jurisdiction? But what facts are you referring to in the continued prosecution? Because as I understand it, he wasn't being continued. The prosecution of that case wasn't being continued. He was, in fact, the district attorney went and said, no, we've got to dismiss this case and have it be null and void. Are you saying it's the second prosecution? In the first prosecution, when the grand jury returned a not true bill, the effect of the statute, 132.360, I believe that's the one, and I'm going to make sure right now. I just read it. Yes. It says the case shall be dismissed. And it was dismissed. It was dismissed by operation of law, but he may continue to prosecute him. They said that you can't get out of jail unless you plead guilty to two counts. And the record shows that the defense attorney said, Your Honor, pleading guilty to these charges to date, his main impetus, one of his main impetus. Did the defense attorney have a copy of the indictment? Yes, he had a copy. What did it say? It said not true bill. Not true bill. So did the defense attorney read it? Did he go to the prosecutor's office? No, the defense attorney didn't read it. What are you doing? It says not true bill. You know, lightning struck. Right. You know, there's one chance in a thousand that a grand jury returns a not true bill. And I got it. I just won the lottery. Why are you bothering me? He didn't see it either. But the effect of that was to dismiss the case. So if there's no case pending, then what is the government doing? What is the State government doing? That has nothing to do with the power of the court. Jurisdiction. Jurisdiction is a very complex principle, you know. It means the word means different things in different contexts. Look, you know, your client, as far as I'm concerned, he did the wrong thing. He did the wrong thing? Yeah, he did the wrong thing. Which thing did he do? He violated the law. Which law? He did the wrong thing. And I think he came out all right as far as he's concerned. He's not registering. He served his time. It's all been explained. He can go on with his life. As far as this young lady is concerned, I don't know what's going on in her life. The question about jurisdiction is fundamental here. Look, you're a nice guy. You smile. You've beaten this thing to death. The horse died a long time ago. So leave it alone, okay? So what would have happened if the DA had realized that there was a no true bill? Okay. Are we saying on October 6th when the grand jury returned it? If he read it and said, all right, goodness, lightning has struck, there's a no true bill. Right. Okay. He would have still had the option to do exactly what he did. And that would have been what due process required, that he would read what the grand jury hands to him. Due process requires him to read that. But what would have been the difference? He still could have done the information, still could have brought the charges. So I don't understand how you're arguing there's a constitutional obligation. Actually, I'm not sure that the district attorney would bring the new charges, because what they were completely motivated by the fact that they had done this to him illegally. When the judge came on the record on October 31st. You know what? You would have a better argument. I understand that you felt that you had to do what was best for your client. But if you had, if the client hadn't pled guilty to the second prosecution, your argument would be stronger. This is, the attorney general is on both sides of this. The government has vast resources. Mr. Simmons, he's just some poor guy. And I want to say, like, you and me, like, you know, maybe Judge Pragerson would never be caught up with, you know, somebody accusing him of anything. But if the grand jury says that you didn't do it, and then they won't let you out of jail anyway, okay, so he doesn't know. This is a horrendous set of circumstances. I agree with you that this young man was dealt a bad hand in the justice system. But the problem is that there is absolute immunity for the prosecutors in this context. And the Court still had jurisdiction. So this is what I, you know, I invite the Court, and I know I've briefed this fully, but to consider if the statute says the case is dismissed, then on what authority is the Court proceeding at that point? And I have to tell you, it looks to me they're sailing on uncharted waters because there's no case. There's no case either way. They didn't suddenly on October 31st dismiss the case like they were pretending to do because it was dismissed on October 6th. I understand. And then, okay, I don't think. You know, you feel passionate. Yeah, and Mr. Simmons, and not just Mr. Simmons, but every person who reads about this story has to. Read the indictment. That's the lesson, is to read the indictment to make sure that they're. Isn't it the prosecutor's duty to read what the grand jury has to say? And the defense attorney. And if you say to him, if you say to the prosecutor, you have absolute immunity whether you read it or you don't, then what incentive is there that a prosecutor will ever read it? And if. That balance has been struck in the law, that it's preferable to have the prosecutor have absolute immunity and be able to freely perform his or her functions than to have people be able to bring lawsuits over every dereliction of, asserted dereliction of duty on the part of the prosecutor. So that balance has been struck in the law. Isn't reading the grand jury decision the prosecutor's duty? They're supposed to do that. But they're human. You know, we had a situation in Van Nuys, California, where we had a very nice DA, a deputy who ran this office. And he was always a smiling, happy guy. And he signed the papers. He got a lot of them. And so one day the police came in. He was in the same building with the LAPD. They came in and arrested him on a warrant. But it was a warrant for his arrest that he himself signed. Because he didn't read it. And old Al, you know, he was good-natured about it. And he said, he said, I thought I had jurisdiction to arrest myself. Anyway. That's the risk we run when we don't read it. Things like that happen. If we have a public policy that says you don't have to follow due process, you don't actually have to read what the grand jury hands to you, I think we're doing a great disservice to the whole system. We have a lot of problems in our system. But here we have a chance to do the right thing. And the right thing would be to have due process. You ought to run for senator. Thank you, Your Honor. I think, you know, you make a very nice appearance, and you've got a good smile, and you speak well. I think you'd be a good candidate. You know, I appreciate that. But it's my client that I'm most concerned about, Your Honor. Your client's okay. So your client, though, what relief does he want from the Section 1983 action? In the 1983 action, he wants a chance to be able to say that, you know, the government acted under the color of state law to deprive him of his civil rights, which happened in both the first case and in the second case. And they did the second case in the clear and knowing absence of jurisdiction at a time when no case was pending. On October 31, 2006, there was no case pending because it was dismissed on October the 6th by the grand jury, not true, though. So there was no case pending. And during that time when no subject matter jurisdiction, that was when they conspired for a predetermined outcome. And that conspiracy took place in the clear and knowing absence of jurisdiction. They had subject matter jurisdiction because they're permitted to handle felony matters under state law. In the state court on October 31, the judge came out, and he acknowledged that the court had no subject matter jurisdiction. He said, it's a legal nullity. It's as if it never happened. As if it never happened. But it did happen. Only in some legal fiction could you say it never happened. You know, you keep repeating yourself. So the point is that the judge acknowledged that he lacked subject matter jurisdiction, and that's why he declared it a legal nullity. I didn't use the word we lacked subject matter jurisdiction. Did he say that? We lacked subject matter jurisdiction. He didn't say subject matter jurisdiction. He said we lacked jurisdiction. He said it's a nullity. A nullity. A legal nullity. Null and void. Right. And isn't that because there's no jurisdiction? Why would it be a nullity? It doesn't work that way. You've got to go brush up on it. He says to the client that it's a legal nullity as if it never happened. And that being said, we're going to bring new charges against you. And I've talked to your future defense lawyer, and you should be entitled to that. Let me tell you this. I spent a lot of time getting into this subject of whether there was a second prosecution here or not, a double jeopardy, that you can't succeed on that either. Even though they punished him already? Even though he served 30 days in jail? Well, he got credit for that. Got credit for where? The second case they gave him no jail. The second time when he pled guilty to doing these things that he violated the law. They didn't give him any more time. There was no credit for time served. They gave him an order of discharge. Yeah, well, he got the same effective benefit. So you did a good job. All right, thanks. And the state will waive its award. You want the state to waive it? You want to say something? Huh? Snatch from the jaws of victory. Yeah, that might help. Go ahead. Go ahead. Are you sure you're in the right courtroom? You know. I'm sure. Yeah. All right. Court and counsel, Paul Renish-Smith, on behalf of the state defendants, and frankly, I do not have that much to add to what has already been discussed here. There were a couple of questions that Your Honors had had that. Let me ask you this. How many not true bills are returned in this court every year? You know, I don't know the answer to that question. You don't know the answer, but you ought to have curiosity to find out. I should have looked. I should have checked. I'm sorry. I do believe that. I checked. I checked. The only points I did want to make is Judge Wardlaw, you had asked the status of the second prosecution. There was some discussion that he had pled guilty to harassment charge and been discharged. That was a conditional guilty plea. He was allowed to take a direct appeal to the court of appeals on his double jeopardy claims. He took that appeal, filed a brief, but I just learned that he has moved to dismiss that appeal on his own motion. I don't know why the court has not yet dismissed it. The motion has just been filed. But he didn't serve any time. He did not serve any time. But I didn't – what I found somewhat distasteful and couldn't understand was why the DA, you know, discovers the error. Okay. So he should have read it. I'm sure he'll read every indictment that's returned for the rest of his life. But why all this whipping up all these additional charges and making them even worse? There seems to be a sense of retaliation going on here. And, you know, the defendant didn't do anything to create the problem, yet it seems then he's charged with a bunch of other crimes and potential greater penalties. I just didn't understand what was going on there. Right. And I was not privy to the thought processes that the DA went to. Do you think it was the right thing to do? I mean, what do we do with this conditional guilty plea that was extracted? If you're asking if it was something I personally would have chosen to do? We know that you personally, I mean, weren't involved in it, but we're asking you in terms of looking at this case, how does it affect the analysis that, you know, after the error was discovered there were additional charges brought and the offer that was made was more, it was a worse offer than before. So how does that affect our analysis? What should we take from that? It does not affect the analysis of the absolute immunity defense, which is really what is at issue here. Factually, it doesn't look good. And I'd be the first to admit that this doesn't look good. But also ---- What about substantive due process? That was the one claim that the district court had sympathy for in terms of the plaintiff. Why isn't this so outrageous that there should be relief because it violates all notions of how the justice system should work? Right. My understanding of the district court's opinion was that the substantive due process issue was a potentially valid claim in the context of Mr. Simmons's Federal habeas corpus claim. And that claim got abandoned. He was ---- all the charges against the State defendants, all the 1983 and 1985 claims against the State defendants were dismissed. And after there was some confusion at one point as to whether or not ---- Mr. Simmons actually filed an appeal in this court, and it was sent back because not all the claims had been disposed of. And so what happened is he ended up dismissing all of his remaining claims, including that Federal habeas corpus claim, and moving forward with this appeal on the 1983 and 1985 claims. And so that one section where the district judge had sympathy for the substantive due process question was in the concept of the habeas claim. For the 1983 and 1985 claims, although facially you take all of the allegations in the complaint as absolutely true, and that those allegations may indeed shock the conscience and implicate both procedural and substantive due process, the fact of the matter is, is that absolute prosecutorial immunity applies. And so ---- Ginsburg. Or does it? Does it apply to the second charging? Why would that apply if the second charging was a knowing violation of substantive due process or in retaliation? I mean, I think there's a distinction in the case law between the ---- I mean, that involves the scope of prosecutorial absolute immunity, which is it has to be something that's in the context of the appropriate exercise of your duties as a prosecutor. And if you're doing something malicious and retaliatory, I think that's crossing the line into beyond the scope of your duties as a prosecutor. I would respectfully disagree with that interpretation of the case law. I think a fairly consistent theme throughout both the Supreme Court's decisions and this Court's decisions is that the intent of the prosecutor or the ---- is not what is issue. And even where ---- I can't ---- no, I don't think prosecutors can abuse their power by purporting to act within the scope of their duties, but actually acting maliciously to save face. I think there's a line there. The only case that I could found that actually extended the scope of absolute immunity is a century-year-old Indiana Supreme Court decision that says that that the scope of the immunity covers even malicious acts. But I just think that at some point you're beyond the scope of what a prosecutor's work entails. And it doesn't entail abusing that process. I don't know if there's sufficient facts here to do that. It's just I don't ---- to me, this doesn't meet the smell test at all about what happened. And if he abandoned the claims, you know, or he abandoned his habeas claim, I mean, I would find ---- I mean, I could see the absolute immunity applying for this, where he made a mistake, an honest mistake, I'm sure he did, in not reading the indictment, that what if the situation were he read the indictment, saw it wasn't a true bill, and decided to go after this kid anyway? He would be protected by absolute immunity. And that's precisely what happened in the Indiana Supreme Court case. Right. That's one case a century-year ---- a century ago at a ---- you know, in Indiana. And frankly, since then, I think we've seen cases where prosecutors have abused their authority. And those prosecutors have been held accountable. The Corona case down in San Diego, other cases. I will have to admit that I am not familiar with any cases from either this circuit or the United States Circuit. There's not a lot of law in this, but then, you know, we have to come up on the right facts. I mean, I don't think we've proven those facts even in this case. One point I would bring up, to the extent that this Court is concerned about the second prosecution and whether or not he has a Section 1983 claim related to the second prosecution, those claims would be barred by Heck v. Humphreys, because he pled guilty to harassment. He was convicted in that second prosecution. And so any 1983 claim against that second prosecution would necessarily impugn the validity of that conviction. And under Heck v. Humphrey, he cannot proceed until that conviction has been found to be invalid. And he had avenues by which to invalidate that conviction, one of which was the direct criminal appeal, which he appears to have abandoned. The other would be post-conviction relief in the State courts in which he could attack the conviction on various levels. Because he's not in custody, the Federal habeas route would not be available to him. But it would not at this point in time, it would not have been impossible for him to, in a parallel proceeding in the State courts, invalidate that conviction. And under Heck v. Humphrey, he would have to do that first before this Court or the district court could consider a Section 1983 claim based on the second prosecution. Did you learn anything here today? Did I learn anything here today? I learned to sit down and shut up. There you go. Let's ask you if you have anything to add. I do not have anything to add. Thank you very much. Not a good move. Do you want to add something? Do you want some rebuttal? Can I ask you, did your client, in fact, dismiss his State court appeal of the second charges? Yeah, he did. The appeal, which had gone to the State public defender's office, completely raised no issues regarding double jeopardy or due process, but instead sought to attack the judgment on a procedural error and have it remanded, which would have resulted in the charges coming back again, which was not in his best interest. So I directed my client to dismiss the public defender's appeal and have it summed up. So you're contemplating State habeas? What's that? You're contemplating a State habeas action? On the ineffective assistance of appellate counsel. That case is that, as the judge pointed out, my client will have his things expunged, no doubt. So this is all about what the three years that these State actors put my client through, which has been a horrible experience for him. Did he file a malpractice action against his first criminal attorney? Yes, he did. And the terms of that settlement were confidential, agreed. So the – but that case was resolved. And the one that was not resolved is about what is the responsibility of the prosecutors – the prosecutors. It's a more difficult issue. It is more difficult, but it's the more challenging one because it implicates the Constitution. And that's why I'm here. So I pray that this Court will address the constitutional issues that were presented by Mr. Simmons under the facts of this case. Well, let me ask you this. When he pled guilty the second time around to a misdemeanor, is that right? Yeah. And with the proviso that it would – he was reserving all of his appellate rights. Oh, I just asked you one question. Okay. And that misdemeanor was a harassment. Harassment committed by threatening to kill himself while he was in jail. Threatening to kill himself with the intention of conveying alarm to Nicole Oldman. Yeah. So that was what he tried to – Was he going to kill himself while in prison, you say? Yeah. He was going to kill him. I think that he threatened to commit suicide, and that was a harassment, conveying a false report with – A threat to commit suicide was a harassment? What's that? Was he – did he make a genuine threat to commit suicide? He – I believe the facts establish that he pled to it, that he did threaten to commit suicide. And that was a harassment. And it was all written out in handwriting. He – this was the deal he took to have that second case finally resolved after the district court and all of the state court judges refused to intervene on his behalf. He ended up getting that deal. How do you get double jeopardy out of this? The double jeopardy was the fact that he was punished for 30 days while illegally, all right, albeit that there was no case pending, and they sent him to jail under a sentencing order with a court of competent jurisdiction, even though there was no jurisdiction under the statute. The court generally had jurisdiction. Tell me what the double jeopardy is. The double jeopardy is that they punished him, sending him to jail for 30 days in the first case. That was a punishment for crimes, for whatever crimes that were alleged. Double jeopardy means double punishment. So where was the second punishment for the same crime? The second punishment is that he suffered a conviction, and he had to stay on trial. That was a different crime, though. That was a different crime. And it's not a lesser included offense. The sexual crimes that were charged in the misdemeanor were identical to the crimes that were alleged in the. . . And he didn't plead guilty to those. He pleaded guilty to something different, and that's what. . . That was. . . That's what makes your case more difficult. Well, three years later, the Attorney General came up with a creative solution, being on both sides of both the Federal case and the State court case. And I acknowledge that I was the one who. . . Sometimes you have to have the courage of your convictions. If you think something's wrong, you've got to stand up and say, this is wrong. I'm not going to take the deal. I'm fighting this all the way. When you compromise, sometimes you compromise, you know, your case. And I'm not saying that anything is wrong with that, because your client really came up favorably considering the charges he was facing initially. But, you know, it's tough to make the argument that there's double jeopardy when it was a different charge the second time that he pleaded guilty. Yeah, on the harassment. You could say the Attorney General was creative in their lawyering to get a conviction for something. But, you know, the prosecutors have a tremendous amount of authority. And a defense attorney like me, in that case, I was a defense attorney. In this case, I'm the plaintiff's lawyer. But as a defense attorney. . . You can go to trial. I had to do the best I could for my client. I understand. But you could have gone to trial and made them prove it up. And then you perhaps would have had a double jeopardy argument. But I understand that you wanted to, you know, have your client do the maximum amount. We tried, actually, to stop the State court prosecution. And if the Federal magistrate judge would have intervened in the preliminary injunction, that would have been a different case. You can't do it. I mean, we can't stop State proceedings. That's a violation of the State Federal comedy principles. I just want to leave this court with the notion that what shocks the conscience is apparent to all, really. And that this case shocks the conscience. And if this court does nothing, it's too bad. Because the people of the United States who are reading about it are troubled. And so, you know, how can the government not pay attention to the Constitution? And at every level, we take an oath to uphold and defend the Constitution, but I don't see necessarily that that's happening in this case, that the constitutional rights were trampled and there was no remedy. We understand your argument. All right. Thank you very much. And we'll go to the next matter. Number five, Buehrer v. Kennedy. That's submitted. Now we come to number six, Willis v. Astor.
judges: Pregerson, Wardlaw, Rawlinson